FILED
2009 May-26 PM 02:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SAMUEL LEE LEAHEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:09-cv-00709-UNAS-HGD** |
| **FRANKLIN COLLECTION** | ) | |
| **SERVICE, INC., a corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>PLAINTIFF SAMUAL LEE LEAHEY'S RESPONSE IN OPPOSITION TO DEFENDANT FRANKLIN COLLECTION SERVICE, INC.'S MOTION TO DISMISS</u>**

**COMES NOW** the Plaintiff, Samuel Lee Leahey (hereinafter "Plaintiff" or "Leahey"), by and through his attorneys of record, and for his Response in Opposition to Defendant Franklin Collection Service, Inc.'s Motion to Dismiss states as follows:

**<u>INTRODUCTION AND BACKGROUND</u>**

Contrary to what Defendant states, this case does not involve reconciling any competing provisions of the FDCPA. The FDCPA is very clear and Defendant knows what the law requires. Applying the clear law to the clear facts in this motion to dismiss context leads to one clear result – the motion is due to be DENIED.

The Defendant, as a debt collector, knows that it is not allowed to make any

improper third-party disclosure as set forth in 15 USC Section 1692c(b).

Despite this law, the Defendant debt collector made an illegal and improper disclosure to a third party of this debt, which the Defendant asserts that Leahey owes[1].

Fundamentally, this is a simple case. Does the law prohibit third party disclosures? Yes. Was there a third-party disclosure? The Complaint alleges there was and that is sufficient under motion to dismiss standard.

## STATEMENT OF FACTS

### A. The Factual Allegations Of The Complaint Are Simple And Straightforward – A Third Party Disclosure Happened Through No Fault Of Leahey

Here is what the Complaint states (with footnotes commenting on the allegations made):

> 10. In April, 2009, Defendant called Plaintiff's home and left a message on Plaintiff's answering machine, which can be heard by anyone[2] at Plaintiff's home.
>
> 11. Plaintiff's friend was in Plaintiff's house and heard[3] the message left for Plaintiff.

[1] In fact, Defendant has provided Plaintiff with no information concerning this debt and Leahey believes that it is not his debt. Leahey, through counsel, has requested that Defendant provide the details of this alleged debt but to date Defendant has failed to do so. If, in fact, this is not Leahey's debt, then the Complaint will be amended to reflect the additional illegal collection activities of Defendant on a debt that Leahey does not even owe.

[2] This is because it is a speakerphone type of answering machine.

[3] No allegation is made that Leahey played the message. Instead the message was left and the friend heard it while it was being left.

> 12. The message revealed to the third party friend that Defendant was a debt collector and was collecting a debt Plaintiff allegedly owed.
>
> 13. Plaintiff's friend told Plaintiff that he overheard this message which caused damage to the Plaintiff.

It is evident that according to paragraph 13, Leahey was not in the room when the entire message was being left. Otherwise, his friend would not have needed to tell him that he heard the message. Despite this, Defendant makes the following unsupported assertions:

> [G]iven the clear warning conveyed by the message as to the personal nature of rest of the message, and the built in pause in the message, Plaintiff **could have picked up the phone, disconnected the call, deleted the message, or asked his friend to step out of the room**. **According to the Complaint**, Plaintiff **nevertheless stood idly by** while the message continued to play in front of his friend, and now asserts that his friend hearing the message is [a] violation of the FDCPA.

[Brief at 5] (emphasis added).

Nowhere in the Complaint does it state that Leahey was in a position to pick up the phone. Nowhere in the Complaint does it state that Leahey could have disconnected the call. Nowhere in the Complaint does it state that Leahey could have deleted the message. Nowhere in the Complaint does it allege that Leahey could have asked his friend to step out of the room. Nowhere in the Complaint does it state that Leahey stood idly by while the message played. These are all assertions or inferences which the Defendant has improperly asked this Court to

take against Leahey.

This was repeatedly pointed out to the Defendant on the very day that the Defendant filed its motion and brief and the request was made that the Defendant withdraw or amend the motion or brief so that Leahey would not have to take the time to respond to incorrect factual allegations. Surprisingly, the Defendant refused to modify this motion to dismiss and the factual allegations contained within the brief and therefore these false allegations have to be addressed.

In an abundance of caution[4], Leahey is simultaneously moving for leave to amend his Complaint to make clear that all of these allegations that Defendant has conjured up in its brief are in fact incorrect and unsupported by the facts.

**B. The Facts Alleged In The Proposed Amended Complaint Refute The Imagined Facts Of Defendant**

The relevant facts listed in the proposed Amended Complaint are as follows:

10. Plaintiff's friend came to Plaintiff's mobile home as the Plaintiff and his friend were going somewhere and Plaintiff needed to change his clothes.

11. Plaintiff went back into his bedroom to change his clothes while his friend remained in the living room where the answering machine is located.

12. The call came in and Plaintiff heard the phone ring but did not know who called.

[4] Leahey understands the standard of a motion to dismiss but since the Defendant has mistakenly taken every inference *against* Leahey, instead of taking the allegations as true, Leahey seeks to amend the complaint to remove any doubt or confusion.

13. Plaintiff could hear a message being left but could not understand the message from the location where he was at the time the message was being left.

14. Plaintiff's friend was in the living room which is connected to the kitchen.

15. The Plaintiff's friend heard the message while it was being left on the speakerphone answering machine of the Plaintiff.

16. Unless Plaintiff’s friend had run from the living room and left the home or barged into one of the children’s rooms and shut the door, he was forced to listen to the message.

17. Plaintiff came in the living room and heard the very end of the message.

18. Plaintiff’s friend confirmed that he had heard the entire message.

19. Plaintiff never gave consent or permission for Defendant to make a third party disclosure.

20. Plaintiff had no idea the Defendant would be calling or would leave a message.

21. Plaintiff did not know the disclosure was happening until it was too late.

22. Plaintiff could not have prevented his friend from hearing the message.

23. Plaintiff was shamed, embarrassed, humiliated, and otherwise damaged as set forth in this Complaint due to the third party disclosure of his personal private financial dealings.

All of the above facts are stated or implied in the current Complaint but given the creation of unsupported "facts" by the Defendant, Plaintiff has moved this Honorable Court for permission to amend his Complaint to remove any doubt about the true facts.

**ARGUMENT**

There are no appellate court decisions on similar facts. The Defendant cites to several cases (addressed later in the brief) that, in *dicta*, suppose a voicemail on a home phone or a call to a home phone might not be a third party disclosure but the Defendant provides no analysis of either of the two cases that directly address the issue in the present case.

The principal case that has addressed similar facts is from last year in this Circuit styled *Berg v. Merchants Assoc. Collection Div., Inc.*, 586 F.Supp. 2d 1336 (S.D.Fla. 2008). *Berg* exhaustively analyzed the issues raised and found that a voicemail message[5] that was overheard by family and neighbors violates the prohibition on third party disclosures (Section 1692c(b)). Leahey's analysis begins with the text itself.

[5] In the present case it was a message left on an answering machine that plays it, while being left, via speakerphone.

## A. Statutory Interpretation Is To Use The Plain Meaning Of The Act

As *Berg* points out, "Where the text is unambiguous, the interpretation ends." 586 F.Supp. 2d at 1340, citing *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1332 (11th Cir. 2005). The plain meaning of the words of the statute are to be followed unless such "gives an absurd result". 586 F.Supp. 2d at 1340, citing *United States v. Nix*, 483 F.2d 1284, 1286 (11th Cir. 2006).

The statute at issue is plain and direct:

> **Communications with third parties**. Except as provided in section 804 [15 U.S.C. 1692b], **without the prior consent** of the consumer given **directly to the debt collector**, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector **may not communicate, in connection with the collection of any debt, with any person other than the consumer**, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Section 1692c(b) (emphasis added).

There is no allegation nor argument that Leahey gave "prior consent" and none that he did so "directly to the debt collector"[6]. Therefore, the plain meaning of the statute is that the Defendant "**may not** communicate, in connection with the collection of any debt, with any person other than the consumer".

Since it is clear the Defendant "may not" communicate with a third party,

---

[6] This is made expressly clear in the proposed amended complaint and is implied in the original complaint as otherwise Leahey would not have been upset by Defendant doing something Leahey had given consent to do. He was upset because he never gave permission to Defendant to reveal his personal financial details to a third party.

the question arises was the message left on the answering machine a "communication"? Indeed it was.

A communication is "the conveying of information regarding a debt directly or indirectly to any person through any medium." Section 1692a(2). As *Berg* points out, almost every court considers messages to be "communication." 586 F.Supp. 2d at 1340-41.[7]

The allegations are that the message which clearly, by its own words, was "an attempt to collect a debt" was overheard by the third party while it was being left[8]. This squarely fits within the prohibition of the FDCPA which plainly tells the Defendant it "**may not communicate**, in connection with the collection of any debt, **with any person other than the consumer.**" 1692c(b) (Emphasis added).

### B. The FTC Staff Commentary Supports The Prohibition On Third Party Disclosure Messages

*Berg* points out that the official FTC Staff Commentary supports the position that if a debt collector, such as the Defendant, leaves a voicemail that could be heard by others, this is a violation of the FDCPA:

> We find more relevant the FTC Staff Commentary, where the FTC stated that "[a] debt collector does not violate this provision when an

[7] The argument in this area has been whether a message that says nothing about a debt is a communication. In the present case, the Defendant admits that its message references the debt. Brief at 4 (quoting the message).

[8] The message itself attempts to only protect against a third party listening to the message while it is being played, not while it is being left. "This message is for []. If you are not [] or their spouse, please delete this message." [Brief at 4]. Oddly, Defendant invites third parties to "tinker" with the debtor's answering machine.

> eavesdropper overhears a conversation with the consumer, **unless the debt collector has reason to anticipate the conversation will be overheard**." Federal Trade Commission *Staff Commentary on the Fair Debt Collection Practices Act*, 53 Fed.Reg. 50104 (Dec. 13, 1988). The example given here by the FTC suggests that the FDCPA is violated by debt collectors who leave messages for consumers while aware that the message may be heard by others.

*Berg*, 586 F.Supp. 2d at 1342 (emphasis added).

Until the *Berg* decision, there was only one case on point and that was an enforcement action filed by the FTC in 2005. *F.T.C. v. Check Enforcement*, 2005 WL 1677480 (D.N.J.2005). The court noted as follows:

> Defendants have not rebutted evidence that they engaged in prohibited communications with third parties in violation of Section 805 of the FDCPA. The FTC has provided evidence that defendants harassed third parties, including children and parents, to obtain payments for consumers' alleged debts. (FTC's Statement of Material Facts, ¶¶ 34-38). Furthermore, the record indicates that defendants **left messages on home answering machines**, which **were overheard by family members and other third parties**, to obtain payments from alleged indebted consumers. (*Id.*) **Thus, defendants have failed to place material issues of fact upon the record to contradict that they engaged in prohibited communications with third parties in violation of Section 805 of the FDCPA**.

2005 WL 1677480 at *8 (emphasis added).

*Berg* held as follows:

> In this case, the Defendant left messages at the Plaintiff's home with a warning to the listener to disconnect if the listener was not the Plaintiff, and that continuing to listen to the message indicates that the listener was Plaintiff Thomas Berg. This warning would perhaps persuade other persons from continuing to listen to the message. However, nothing in the message would alert the Plaintiff to disconnect if he were to listen to the message in the presence of

> others. Even if by leaving the warning, the Defendant had taken reasonable precautions to prevent third persons from continuing to play the messages themselves, the Plaintiff could claim that the **Defendant could still reasonably anticipate that third persons would overhear the message while the Plaintiff played it**. Also, the **FDCPA specifically requires that prior consent for third party communication be given directly to the debt collector by the consumer.** § 1692c(b). A **third party, or the debtor in the presence of a third party, continuing to listen to the message in spite of the warning does not qualify as prior consent directly to the debt collector. Therefore, the Court cannot say that the Plaintiff has failed to state a claim upon which relief can be granted when the Defendant left messages on the Plaintiff's voice mail that third persons heard**.

586 F.Supp. 2d at 1343-44 (emphasis added).

### C. The Solution Is To Not Leave Voicemails

The Defendant appears distraught that this ruling is so fundamentally unfair because it has the right to leave voicemails. Such a position is unsupported.

In the primary case requiring the Mini-Miranda in messages, *Foti v. NCO Fin. Sys.*, 424 F.Supp. 2d 643 (S.D.N.Y. 2006), the collector argued it was faced with a "Hobson's choice" of either complying with the Mini-Miranda and risking a third party disclosure or it could comply with the third party disclosure law but it risked a Mini-Miranda violation. The *Foti* court rightfully dismissed this meritless argument:

> However, just because a debt collector is permitted to continue to attempt to collect the debt **does not entitle the collector to use *any* means, even if those means are the most economical or efficient**. *See Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir.1993) ("It is apparent that mass mailing may sometimes be the only feasible means

> of contacting a large number of delinquent debtors, particularly when many of those debtors owe relatively small sums. **But it is also true that the FDCPA sets boundaries within which debt collectors must operate**.”). In this case, the fact that NCO may not be able to leave a pre-recorded message that complies with both § 1692e(11) and § 1692c(b) of the Act in no way warrants a conclusion that “communication” should be narrowly interpreted. Rather, it merely suggests that a debt collector is not permitted to leave a pre-recorded message in violation of the FDCPA. **Debt collectors, however, could continue to use other means to collect, including calling and directly speaking with the consumer or sending appropriate letters. Thus, the alleged “Hobson's Choice” in this case is self-imposed by NCO. It is only because of the method of debt collection selected-calling and leaving the type of pre-recorded messages-that NCO is faced with this potential dilemma**. “As the Supreme Court has held in the general context of consumer protection-of which the Fair Debt Collection Practices Act is a part-‘it does **not seem unfair to require that one who goes deliberately close to an area of proscribed conduct shall take the risk that he may cross the line.**’ ” [[9]] *Russell*, 74 F.3d at 35 (quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965)) (additional quotations omitted).

424 F.Supp. 2d at 659-660.

Likewise in *Berg*, the court was not persuaded by the Defendant’s handwringing over not being able to leave voicemail messages:

> The Court is aware that this ruling will make it difficult, though perhaps not impossible, for debt collectors to comply with all of §§ 1692c(b), 1692d(6), and 1692e(11) at once in a message left on the consumer's voice mail. However, we follow reasoning similar to *Foti* to **find no reason that a debt collector has an entitlement to use this particular method of communication. Debt collectors have**

[9] Footnote 26 in *Foti* is referenced in Defendant’s brief at 11. *Foti* discusses the non-holding statements of the Defendant’s cases but declined to speculate “as any such resolution would be purely advisory”. By sharp contrast, *Berg* and the *FTC* opinions directly addressed these facts and found that if a third party hears the message, the FDCPA has been violated.

> **other methods to reach debtors including postal mail, in-person contact, and speaking directly by telephone**.

586 F.Supp. 2d at 1344 (emphasis added).

This is the heart of the matter. Debt collectors cannot use every effective means. A collector showing up at a house with a shotgun demanding payment will be wonderfully effective. That doesn't change the fact that it is also illegal.

The Defendant argues, with no evidence at this motion to dismiss stage, that not being able to leave messages on answering machines will bring chaos to the economy. Doubtful. But even if true, it doesn't change the law. Congress has for 30 years banned third party contacts. Just because there is a technology that debt collectors would like to use doesn't change the law. For example, collectors would love to put messages on a debtor's Facebook.com account (the "wall" where public messages are written) but to do so would violate the law. Effective? Absolutely. Illegal? Certainly.

So the solution? Don't leave messages on answering machines. If a collector leaves the message, then do everything possible to minimize the third party disclosure but understand if a third party hears it, then the law has been violated. This is that "risk that he may cross the line" that the Supreme Court referenced in *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965), cited by *Foti*, Here, Defendant chose to get as close to the line as possible. Here, Defendant crossed that line. Therefore, the Supreme Court

teaches that there should be no cry of "unfairness" on the part of Defendant for its own intentional actions.

**D. The Cases Relied Upon By Defendant Do Not Hold Contrary To *Berg* – Instead Defendant Seizes Upon *Dicta***

The Defendant relies on several cases from California including *Joseph v. J.J. Mac Intyre Cos., LLC*, 281 F.Supp. 2d 1156 (N.D.Cal. 2003), *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F.Supp. 2d 1104 (C.D. Cal 2005), and *Costa v. National Action Fin. Servs.*, 2007 WL 4526510 (E.D.Cal. Dec. 19, 2007).

These cases do not involve third party disclosures. In these cases the collectors did not leave the Mini-Miranda. This is a clear violation. To avoid liability the collectors argued that if they had complied with the disclosure law (Mini-Miranda) then they might have violated the third party disclosure prohibition.

Thus the courts did not face the same situation as before this Court and the two opinions discussed earlier (*Berg* and *FTC*). The California courts did say in *dicta* that the chance of a third party disclosure was lower in a call or message to a home phone. It is interesting, however, that the Defendant references the following quotation in *Costa*, but fails to mention[10] the critical factual difference as follows:

Defendant argues, in rebuttal, that the court should not follow this line

---

[10] *See* Brief at page 11.

> of cases[11], as the type of "full" disclosure on a voice mail message, required by *Hosseizadeh*, may leave defendant open to liability under other sections of the statute, specifically § 1692c(b)[12]. Defendant's argument is unpersuasive. In the present case, defendant left messages on plaintiff's *home* phone. *Compare Horkey v. J.V.D.B. & Associates, Inc.*, 333 F.3d 759 (7th Cir.2003) (upholding statutory damages under § 1692d for collection agency's phone calls to plaintiff at her place of employment). **Plaintiff lived alone at the time and has testified no one else unintentionally heard the messages left by Elizabeth**. (Ex. B to Def. Mot., Costa Depo. at 76:19-24). "[T]he legislatures' concern in enacting these provisions about privacy violations resulting from deliberate disclosure of the debtor's status to third parties such as the debtor's employer has far less applicability to phone calls made to the debtor's phone number at his or her residence for similar reasons." *Joseph v. J.J. MacIntyre Companies, L.L.C*, 281 F.Supp.2d 1156, 1164 (N.D.Cal.2003). Therefore, while defendant's **argument may carry weight in certain circumstances, under the undisputed facts here, its argument is simply inapplicable**.

*Costa*, 2007 WL 4526510 at *5 (emphasis added). Here, of course, the facts are that a third party <u>did hear</u> the message left by the Defendant debt collector. Thus, the cases relied upon by Defendant are simply inapplicable because of the factual differences.

It is interesting that Defendant tries to fit itself within *Berg* by alerting Leahey to disconnect the call if a third party could hear it. The problem, of course, is this assumes Leahey played the message in front of his friend. While the Defendant may wish for these facts, and may have misread the Complaint to see these facts, they simply don't exist. So the statement in *Berg* about the debtor not

[11] The line of cases cited by Defendant that hold that the Mini-Miranda must be given as any call or message is a communication under the FDCPA.

[12] This is the third party disclosure prohibition.

being warned to disconnect has no meaning here.

**E. A Third Party Opening Debtor's Mail Is Not Comparable To Hearing A Message As It Is Being Left**

Next Defendant cites to *Segal v. National Action Financial Services, Inc.*, 2006 WL 449176 (M.D. Fla. Feb. 22, 2006), to argue that a message being heard while it is left is the same as a third party opening the debtor's mail. [Brief at 14]. In *Segal* the third party actively opened the mail. That is a far cry from a third party passively sitting by while a third party disclosure is made via speakerphone while Leahey is not in the room until it was too late. The facts of this case are more akin to Defendant attempting to communicate through a postcard or a billboard that has the warning: "If you are not the debtor, stop reading!".

**F. There Is No Issue Of Mitigation Of Damages At This Motion To Dismiss Stage**

The Defendant, again creating facts, states:

> FCSI's message gave Plaintiff fair warning and an ample opportunity to avoid a third party disclosure to any friend who might be around **when Plaintiff checked his messages**. Plaintiff **cannot stand dumbly by while the entire message plays** and then claim he has been egregiously damaged by the third party disclosure.

[Brief at 16] (emphasis added). These facts are not true and in any event, the obligation to mitigate damages that Defendant cites to on pages 16-17 is a non-issue at the motion to dismiss stage.

Defendant cites to *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998), which was a Title Seven case that was tried to a verdict. The court did discuss the obligation of a plaintiff to mitigate damages but such issues turn on the plaintiff who "unreasonably failed to avail herself of the employer's preventative or remedial apparatus . . ." 524 U.S. at 806-07. It is puzzling why Defendant thinks a factual issue such as "reasonableness" is appropriate at the motion to dismiss stage, particularly since the facts alleged are that Leahey did nothing wrong.

**G. Defendant Invaded The Privacy Of Leahey By Revealing Details Of Leahey's Private And Personal Financial Information To A Third Party**

The Defendant admits that a debt collector can invade the privacy of Alabama consumer when it does so through its collection activities to cause "shame or humiliation to a person of ordinary sensibilities." Brief at 18, quoting J*acksonsville State Bank v. Burwell*, 481 So. 2d 863, 865 (Ala. 1985). Considering that the FDCPA in the preamble notes that activities of debt collectors who violate the law lead to "invasions of privacy[13]", this Court can look at the standards of FDCPA to see when an invasion of privacy has occurred. There is no question that the FDCPA prohibits third-party disclosures (with limited exceptions which do not apply in this case).

[13] *See* 15 USC 1692(a)("Abusive debt collection practices contribute to . . . invasions of privacy").

The Defendant knew that leaving a message on an answering machine had the probability, and in fact it did occur here, of a third-party learning of a very private personal financial matter. This is clearly an invasion of privacy under a motion to dismiss standard as by revealing this personal financial information it caused Leahey "shame or humiliation to a person of ordinary sensibilities."

**H. Negligent/Wanton Hiring And Supervision Claims Are Supported By Both The State Law And FDCPA Claims**

Since the invasion of privacy claim has been stated, and since a valid FDCPA claim has been stated, the negligent and/or wanton hiring and supervision claims are due to move forward through discovery.

**I. The First Amendment Does Not Prohibit The Regulation of Speech of Debt Collectors**

The Defendant's argument under the First Amendment is not supported by any facts, law, or any argument other than one sentence in the Defendant's Conclusion. [Brief at 20]. Without knowing any basis or argument for this single assertion in the Conclusion, it is difficult to respond. In an abundance of caution, however, Leahey refers this Honorable Court to *Berg* which addressed an apparently similar attack on the constitutionality of the FDCPA. 586 F.Supp. 2d at 1344-1345 (Holding the restrictions on speech in the FDCPA are narrowly tailored and since it is commercial speech between private parties "strict scrutiny" is not appropriate).

**CONCLUSION**

The law in this case is straightforward - do not make illegal third-party disclosures. The facts in this case are straightforward - the Defendant left a message on an answering machine that played out over a speakerphone and while doing so a third party, Leahey's personal friend, overheard the message through no fault of Leahey.

The Defendant makes a policy argument unsupported by the evidence that that telephone message is an important tool for debt collection and if this Court rules against the Defendant's motion to dismiss that debt collection may be impeded and therefore the economic system may no longer function properly. This is like a debt collector saying that removing the right from a debt collector to lie and threaten imprisonment will impact debt collection which will impact the economy so therefore the court must allow this type of misconduct. That such a bizarre argument is made in the face of the straightforward facts and law in this case is simply inappropriate and lacks merit.

The motion to dismiss should be denied in its entirety and the Defendant should be directed to file an Answer and the parties to have the party planning meeting so this case can begin to move forward with discovery.

Respectfully Submitted,

/s/ John G. Watts
John G. Watts ASB-5819-T82J
**Attorney for Plaintiff**

OF COUNSEL:
Watts Law Group, PC
700 29th Street South, Suite 201
Birmingham, Alabama 35233
(205) 879-2447
(888) 522-7167 facsimile
john@wattslawgroup.com

/s/ M. Stan Herring
M. Stan Herring ASB-1074-N72M
**Attorney for Plaintiff**

OF COUNSEL:
M. Stan Herring, P.C.
700 29th Street South, Suite 201
Birmingham, Alabama 35233
(205) 714-4443
(888) 522-7167 facsimile
msh@mstanherringlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing pleading through this court's electronic filing and notification system on this the 26th day of May, 2009.

/s/ John G. Watts
Attorney for Plaintiff