# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL LEE LEAHEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **2:09-cv-00709-AKK** |
| FRANKLIN COLLECTION ) | |
| SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

### I.  BACKGROUND

This is an action brought under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").  Plaintiff also alleges state law claims pursuant to this court's supplemental jurisdiction.  28 U.S.C. § 1367.

Plaintiff Samuel Lee Leahey ("Leahey") alleges that Defendant Franklin Collection Service, Inc. ("FCSI") left a message regarding an alleged debt in April 2009[1] on Leahey's speakerphone answering machine at his residence.  Am.

---

[1] The April 2009 date appears in Leahey's initial Complaint at ¶ 10 but does not appear in the Amended Complaint.

1

Compl. ¶¶ 8-15.  In its motion to dismiss,[2] FCSI stated that, during the relevant time period, FCSI employee's used the following message:

> This message is for [ ].  If you are not [ ] or their spouse, please delete this message.  If you are [ ] or their spouse, please continue to listen to this message.  By continuing to listen to this message, you acknowledge that you are the right party.  You should not listen to this message so that other people can hear it, as it contains personal and private information.  There will be a three second pause in the message to allow you to listen to the message in private.  (Pause.)  My name is John Carter.  I am a debt collector with FCSI.  This is an attempt to collect a debt, and any information will be used for that purpose.  It is important that you return my call at 1-866-550-8949.  Again, that's 1-866-550-8949.[3]

FCSI's Mem. of Law in Supp. of its Mot. to Dismiss, Ex. A.

Leahey alleges that his answering machine is located in his living room and that he was in his bedroom at the time the message was left.  Am. Compl. ¶ 11. He could hear someone leaving a message, but could not understand its contents. Am. Compl. ¶ 13.  His friend, who was in the living room at the time, verified that he heard the message as it was being left.  Am. Compl. ¶¶ 15, 17.  Leahey alleges that the message constituted an unauthorized communication to a third party in

---

[2] FCSI first filed a motion to dismiss on May 5, 2009.  Leahey then amended his complaint on August 11, 2009.  FCSI filed a motion to dismiss the amended complaint on August 21, 2009, which referred the court to the arguments made in the first motion to dismiss.

[3] Leahey does not dispute that this was the message left on his answering machine. Because the message text is central to Leahey's claim and the authenticity of FCSI's exhibit is undisputed, the court may consider the exhibit without converting the motion to dismiss into a motion for summary judgment.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

violation of the FDCPA and that he was harmed by this communication.[4]  Am. Compl. ¶¶ 19-26, Count I.  Leahey further alleges that the message constituted an invasion of his privacy under Alabama law.  Am. Compl. Count II.  Finally, Leahey also alleges that FCSI is liable under Alabama law for negligently and wantonly hiring and supervising incompetent debt collectors who were allowed or encouraged to violate the law.  Am. Compl. Count III.

## II.  MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted."  When determining whether to grant a motion to dismiss under Rule 12(b)(6), the court must determine whether there are "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (1974).  The "complaint's allegations must be taken as true and read in the light most favorable to the plaintiff[]."  *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992).

---

[4]Leahey alleges that FCSI made "collection calls," had contacts with "third parties," made "repeated attempts to collect this debt," and engaged in "abusive collection communications," (Am. Compl. ¶¶ 29-32), thus suggesting that the collection efforts were not limited to the single message left on Leahey's answering machine.  However, a careful reading of the Amended Complaint, as well as Leahey's response to the motion to dismiss, establishes that only one communication is at issue in this case.

## III.  ANALYSIS

*A.     Leahey Has Stated a Claim Under the FDCPA*

FCSI argues that Leahey's claim under the FDCPA fails as a matter of law because the message left on Leahey's machine complies with the relevant provisions of the FDCPA.  FCSI's Mem. of Law in Supp. of its Mot. to Dismiss, 2-3.  Specifically, FCSI argues that the message it left harmonizes three potentially competing provisions of the FDCPA:  §§ 1692d(6), 1692e(11), and 1692c(b).  *Id*.

Under § 1692d(6), a debt collector is prohibited from "the placement of telephone calls without meaningful disclosure of the caller's identity."  Section 1692e(11) provides further explanation of the type of disclosures required, prohibiting "[t]he failure to disclose [in the initial oral communication with the consumer] that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose . . . ."  These two provisions are commonly referred to as the "Mini-Miranda" warning.

Section 1692c(b), by contrast, regulates to whom disclosures may be made and states in relevant part:

> [W]ithout the prior consent of the consumer given directly to the debt collector, . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the

4

attorney of the debt collector.

This provision, therefore, prohibits debt collectors from communicating with third parties without the prior consent of the consumer.[5]

FCSI presents two primary arguments in support of its position: first, that a message that complies with the FDCPA's disclosure provisions is necessarily in compliance with the FDCPA's prohibition on third-party communications; and second, that the message was designed to protect a debtor's privacy interests and thus does not run afoul of § 1692c(b).  The court rejects both arguments.

FCSI's first argument is based on the assumption that, because courts have determined that collection agencies must comply with the FDCPA's disclosure provisions when leaving messages, (*see, e.g., Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005)), such disclosures cannot also be considered a violation of the FDCPA's prohibition on third-party communications without the debtor's consent.  The United States District Court for the Southern District of Florida squarely addressed this issue in *Berg v. Merchants Ass'n Collection Div., Inc.* 586 F. Supp. 2d 1336 (S.D. Fla. 2008).  In

---

[5]FCSI does not dispute that the message at issue is a "communication."  The FDCPA includes in its definition of communication: "conveying information regarding a debt directly or indirectly to any person through any medium."  § 1692a(2).  This court finds that this definition is amply broad to encompass messages left on answering machines.

that case, the collection agency left multiple messages, which were overheard by various third parties.  The messages contained a warning, similar to the one in FCSI's message, that any person who was not the consumer or the consumer's wife should not listen to the message. The messages then proceeded to give the Mini-Miranda warning.  *Id.* at 1338-39.  The court rejected the defendant's argument, also advanced here by FCSI, that the messages did not violate the FDCPA's prohibition on third-party communications.  The court stated:

> The Court is aware that this ruling will make it difficult, though perhaps not impossible, for debt collectors to comply with all of §§ 16992c(b), 1692d(6), and 1692e(11) at once in a message left on the consumer's voice mail.  However, we . . . find no reason that a debt collector has an entitlement to use this particular method of communication.  Debt collectors have other methods to reach debtors including postal mail, in-person contact, and speaking directly by telephone.

*Id*. at 1344.  *See also Foti v. NCO Financial Sys., Inc.*, 424 F. Supp. 2d 643, 659-60 (S.D.N.Y. 2006) (rejecting argument in case involving pre-recorded messages that defendant was presented with a "Hobson's Choice" of complying either with the disclosure requirements or the prohibition on third-party communications; concluding that the court had no obligation to harmonize the law to permit debt collectors to employ a risky method of communication).  *But see Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1163 (N.D. Cal. 2003) (suggesting

in dicta that automated calls complying with the disclosure provisions are less likely to violate § 1692c(b) than certain other methods, such as indicating a collection notice on the outside of an envelope); *Hosseinzadeh*, 387 F. Supp. 2d at 1112 n.11 (C.D. Cal. 2005) (same).

In the alternative, FCSI argues that the message it left on Leahey's answering machine complies with § 1692c(b)'s prohibition on third-party communications because it begins by stating that the message is intended for the debtor or the debtor's spouse, that it should not be played in front of third parties, and then pauses before beginning the required disclosures. FCSI's Mem. of Law in Supp. of its Mot. to Dismiss, 12-15. Under the plain language of the statute, "without the prior consent of the consumer given directly to the debt collector, . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer." This court agrees that "[a] third party, or the debtor in the presence of a third party, continuing to listen to the message in spite of the warning does not qualify as prior consent directly to the debt collector" as required by § 1692c(b). *Berg*, 586 F. Supp. 2d at 1343.[6] *See*

---

[6] FCSI seeks to distinguish *Berg* on the basis that the message at issue in that case did not include warning that the message contained personal information not suitable for third parties and did not contain a pause before the Mini-Miranda warning. FCSI's Reply Br. in Supp. of its Mot. to Dismiss, 4. The court does not find the difference material - neither the debt collector's statement nor the pause constitute "prior consent of the consumer given directly to the debt

*also F.T.C. v. Check Enforcement*, 2005 WL 1677480, at *8 (D.N.J. July 18, 2005) (concluding that collectors engaged in prohibited communications with third parties by leaving messages on home answering machines that were overheard by third parties).

Taking all allegations as true, FCSI left a message on Leahey's answering machine, which was overheard by his friend without Leahey's consent. Therefore, this court cannot hold that Leahey has failed to state a claim upon which relief may be granted. Accordingly, the court denies FCSI's motion on the FDCPA claim.

B.     *Leahey Has Not Stated a Claim For Invasion of Privacy*

Leahey also asserts a claim under Alabama law for invasion of privacy. Am. Compl. Count II. The Supreme Court of Alabama has "recognized the right of a creditor to take reasonable action to pursue a debtor and collect a debt." *Jacksonville State Bank v. Barnwell*, 481 So. 2d 863, 865 (Ala. 1985). However, when a creditor's actions "exceed the bounds of reasonableness," the debtor may bring a claim for invasion of privacy. *Id.* at 865-66. In the debtor-creditor

---

collector." § 1692c(b). And, accepting the facts of the Amended Complaint as true, Leahey was not in the same room with the answering machine; he thus could not have heeded the warning to stop the message before his friend heard information regarding the debt collection.

8

context, invasion of privacy has been characterized as "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Id.* at 865 (quoting *Smith v. Doss*, 251 Ala. 250, 253, 37 So. 2d 118 (1948)).

Leahey argues that this court "can look at the standards of FDCPA to see when an invasion of privacy has occurred." Pl. Leahey's Resp. in Opp'n to Def. FCSI's Mot. to Dismiss, 16. Leahey, however, seems mistakenly to assume that a violation of the FDCPA necessarily constitutes an invasion of privacy under Alabama law. This is not the case. Moreover, efforts to collect a debt may be annoying, embarrassing, and upsetting without rising to the level of an invasion of privacy. For example, in *Windsor v. General Motors Acceptance Corp.*, 323 So.2d 350 (Ala. 1975), a debtor's mother brought a claim for invasion of privacy based on a creditor's repeated attempts to collect payments on a car. Over a one to two-year period, the creditor attempted to contact the debtor fifteen to twenty times by telephone or through home visits. On several occasions, the creditor spoke with the debtor's mother, who testified that she found the communications upsetting and, on one occasion, the communications caused her to be hospitalized. *Id.* at 351-52. Nevertheless, the Supreme Court of Alabama upheld the trial court's directed verdict in the creditor's favor after determining that the evidence

9

was insufficient to sustain a claim for invasion of privacy.  *Id.* at 352.  *See also Sparks v. Phillips & Cohen Assocs., Ltd.*, 641 F. Supp. 2d 1234, 1252-53 (S.D. Ala. 2008) (finding a violation of the FDCPA but applying Alabama law and determining that a creditor did not commit the tort of invasion of privacy by contacting an attorney more than once about a debt for which she had no responsibility, contacting her minor daughter, and engaging in rude and combative conversations).

Creditor-debtor cases in which courts have upheld an invasion of privacy claim present far more egregious facts.  The Supreme Court of Alabama upheld an invasion of privacy claim when a creditor telephoned the debtor's home and place of employment twenty-eight to thirty-five times, went to the debtor's place of employment and called the debtor a "deadbeat" and a "son of a bitch" in front of his colleagues, and fraudulently altered a security instrument in an attempt to collect the debt.  *Jacksonville State Bank*, 481 So. at 865-66 (Ala. 1985).  *See also Black v. Aegis Consumer Funding Group, Inc.*, 2001 WL 228062, at *4-7 (S.D. Ala. Feb. 8, 2001) (applying Alabama law and finding an invasion of privacy when a debt collector repeatedly made threatening and profanity-laced calls to the

debtor at home and at work, her babysitter, her minor children, and her parents).[7]

Even taking as true all facts alleged in Amended Complaint, the intrusion alleged by Leahey – that his friend overheard a single message indicating that a debt collector was seeking to get in touch with him – is insufficient to establish an invasion of privacy claim under Alabama law. The invasion of privacy alleged by Leahey is less severe than the numerous calls and home visits in *Windsor* or the multiple contacts in *Sparks*, including one with a minor, which were determined to be insufficiently outrageous to sustain a claim for invasion of privacy. And the single message in this case falls far short of the repeated, abusive behavior in *Jacksonville* and *Black*. Consequently, Leahey has failed to state a claim for invasion of privacy upon which relief may be granted.

C.  *Plaintiff Has Not Stated a Claim for Negligent or Wanton Hiring and Supervision*

To sustain a claim for negligent or wanton hiring or supervision, training and/or retention, "the plaintiff must establish that the allegedly incompetent

---

[7] A recent Eleventh Circuit case is illustrative of the high bar set by Alabama law to prevail on a claim for invasion of privacy. In *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287 (11th Cir. 2007), the plaintiff presented evidence that her supervisor routinely used profane language in the office, propositioned her, requested that she perform oral sex on him in the office, and repeatedly unzipped his fly in her presence. The Eleventh Circuit concluded that, even assuming all allegations were true, "the harassment . . . was not sufficiently outrageous as a matter of Alabama law" to sustain an invasion of privacy claim. *Id.* at 1309.

employee committed a common-law, Alabama tort." *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002); *see also Thomas v. Util. Trailer Mfg. Co.*, 2006 WL 2480057, at *3 (M.D. Ala. Aug. 28, 2006) (accord). Because Leahey's invasion of privacy claim fails as a matter of law, he cannot sustain a claim for negligent or wanton hiring or supervision.

The court determines that Leahey's Amended Complaint states a claim under the FDCPA and, therefore, FCSI's Motion to Dismiss is DENIED as to Count I of the Amended Complaint. The Motion to Dismiss is GRANTED with respect to Leahey's state law claims, Counts II and III of the Amended Complaint.

DONE this 4th day of February, 2010.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE